ATTORNEYS FOR APPELLANT
George M. Plews
Todd G. Relue
Plews Shadley Racher & Braun LLP
Indianapolis, IN

ATTORNEYS FOR APPELLEE, THE
LAVEN INSURANCE AGENCY, INC.
Philip E. Kalamaros
Brad R. Pero
Hunt Suedhoff Kalamaros LLP
St. Joseph, MI

ATTORNEYS FOR APPELLEE,
PROASSURANCE INDEMNITY CO., INC.
David C. Jensen
John P. Twohy
Eichhorn & Eichhorn, LLP
Hammond, IN

ATTORNEY FOR AMICUS CURIAE,
INDEPENDENT INSURANCE AGENTS OF
INDIANA, INC.
Richard S. Pitts
Indianapolis, IN

Brett T. Clayton
Eichhorn & Eichhorn, LLP
Indianapolis, IN

_____

# In the
# Indiana Supreme Court

_____

No. 49S05-1407-PL-491

**FILED**

Mar 12 2015, 11:14 am

CLERK
of the supreme court,
court of appeals and
tax court

INDIANA RESTORATIVE DENTISTRY, P.C.,

*Appellant (Plaintiff),*

v.

THE LAVEN INSURANCE AGENCY, INC. AND
PROASSURANCE INDEMNITY CO., INC.
F/K/A THE MEDICAL ASSURANCE CO., INC.

*Appellees (Defendants).*

_____

Appeal from the Marion Superior Court, No. 49D03-1010-PL-46336
The Honorable Patrick L. McCarty

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1212-PL-627

_____

**March 12, 2015**

**Rush, Chief Justice.**

After a fire, a dentist's office discovered that the contents coverage of its insurance policy— a policy it had maintained for over thirty years—was inadequate to cover the loss. The insurance agent and the insured now dispute whether their long-term relationship was a special relationship that obligated the agent to advise the insured about its coverage. The parties also dispute whether their past dealings show a "meeting of the minds" on an implied contract, requiring the agent to procure a policy that would cover all losses to office contents.

On summary judgment review, we hold that the designated evidence supports conflicting inferences on whether the parties enjoyed a special relationship that created a duty to advise. As for the implied contract to procure full coverage, we hold that the record does not show any discussion between the parties on the matter, much less a meeting of the minds. We therefore reverse in part and affirm in part the trial court's order granting partial summary judgment.

## Facts

Indiana Restorative Dentistry, P.C., ("IRD") insured its office under a policy issued by ProAssurance Indemnity Company, Inc., ("ProAssurance") and procured through the Laven Insurance Agency, Inc. ("Laven"). IRD had initially purchased its policy from Hepler-Smith Insurance, Inc., in 1978—an insurance agency that later changed its name and eventually merged with Laven in 1997. In October 2009, a fire destroyed the entire IRD office. The value of the lost office contents was $704,394.35, which included equipment and technology used in IRD's prosthodontist laboratory. IRD submitted an insurance claim to ProAssurance for the lost office contents under its building personal property policy. The policy included coverage for office contents and had a limit of $204,371. ProAssurance paid this limit, which left IRD with an approximately $500,000 shortfall. Additional facts will be provided as necessary.

## Procedural History

IRD sued Laven and ProAssurance in tort and contract, hoping to recoup the shortfall under several theories. First, it alleged Laven breached a tort duty, arising out of a "special relationship" with IRD, to advise IRD of adequate coverage. IRD also alleged breach of contract for Laven's failure to procure either $350,000 in total office contents coverage, specifically, or full coverage

for the entire $704,394.35 loss, generally. Finally, it alleged ProAssurance was vicariously liable for Laven's omissions.

The complicated procedural posture of this case narrows the scope of the issues before this Court. All parties moved for summary judgment, but the trial court partially granted only ProAssurance's motion and summarily denied IRD's and Laven's. On ProAssurance's motion, the trial court first concluded that Laven had no duty to advise based on a special relationship because the parties had "an arms-length relationship typical of that which exists between an insurance agency and an insured." It also concluded that Laven had no "contractual duty to provide insurance that would have fully covered the fire losses sustained by IRD," and that ProAssurance was not "vicariously liable for the alleged acts or omissions of Laven." IRD moved to correct error and to reconsider in light of newly discovered evidence. But the trial court denied both motions, reaffirmed its prior order, and entered it as a partial final judgment under Trial Rule 54(B)—thereby allowing an appeal "upon this or other issues resolved by the judgment."

Though the order granting summary judgment for ProAssurance was appealable, it was only *partial* because it did not expressly address one of IRD's four claims: whether Laven had a contractual duty to procure $350,000 in office contents coverage. Instead, the trial court dealt with that claim by denying IRD's and Laven's separate motions for summary judgment—both of which raised the $350,000 question. The trial court then certified both denials for interlocutory appeal, App. R. 14(B)(1), but the Court of Appeals did not accept jurisdiction, App. R. 14(B)(2). Without a final judgment on that claim under Trial Rule 56(C), or a partial final judgment under Rule 54(B), both interlocutory appeals ended when the Court of Appeals refused jurisdiction. Consequently, even though the parties inserted the issue of Laven's contractual duty to procure $350,000 into this appeal, it remains pending before the trial court. IRD successfully appealed only the trial court's partial summary judgment order for ProAssurance. We address only the three claims disposed of in that order.

IRD, meanwhile, appealed that partial summary judgment order, and the Court of Appeals reversed on all three claims. Ind. Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc., 999 N.E.2d 922 (Ind. Ct. App. 2013), reh'g denied. It found no genuine issues of material fact and granted summary judgment for IRD, holding that a special relationship existed between Laven and IRD, which created a duty to advise, and that no implied contract existed between Laven and IRD "to procure full

3

coverage insurance based on its past dealings with IRD." Id. at 937. But the Court of Appeals found a genuine issue of material fact on ProAssurance's vicarious liability. Id.

Both Laven and ProAssurance sought transfer, but we granted only Laven's petition. App. R. 58(A). We now address whether genuine issues of material fact exist regarding Laven's tort duty to advise and contractual duty to procure full coverage. However, we summarily affirm the Court of Appeals' decision that material questions of fact remain on ProAssurance's vicarious liability for Laven's alleged wrongdoing. App. R. 58(A)(2).

**Standard of Review**

We review an order for summary judgment de novo, which is the same standard of review applied by the trial court. Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party must "affirmatively negate an opponent's claim" by demonstrating that the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. (internal quotation marks omitted). The burden then shifts to the nonmoving party to demonstrate a genuine issue of material fact. Id. In reviewing the record, we construe all reasonable inferences in favor of the nonmoving party. Id. Summary judgment is inappropriate when genuine factual issues persist—that is, when the designated evidence "support[s] conflicting reasonable inferences." Id. (quoting Williams v. Tharp, 914 N.E.2d 756, 761 (Ind. 2009)) (internal quotation marks omitted).

**Discussion and Decision**

All insurance agents who undertake to procure coverage owe their clients a general duty of reasonable care and skill in obtaining insurance and following their clients' instructions. Filip v. Block, 879 N.E.2d 1076, 1085 (Ind. 2008). However, an agent's duty to procure is distinct from the duty to advise their clients about the adequacy of coverage or any alternative coverage. Id. Agents have no duty to advise unless the agent and the insured have a "special relationship" of trust and intimacy. Id.; DeHayes Grp. v. Pretzels, Inc., 786 N.E.2d 779, 782 (Ind. Ct. App. 2003), trans. denied.

An insured may allege a breach of the duty to procure as either a claim for negligence or a breach of contract. Stockberger v. Meridian Mut. Ins. Co., 182 Ind. App. 566, 577, 395 N.E.2d 1272, 1279 (1979). But a breach of the duty to advise exists only in tort. See Am. Family Mut. Ins. Co. v. Dye, 634 N.E.2d 844, 847 (Ind. Ct. App. 1994), trans. denied.

4

On summary judgment review, we examine both whether Laven had a duty to advise—more specifically, whether a special relationship existed—and the scope of its duty to procure. IRD argues that it had a special relationship with Laven that created a duty to advise. IRD claims this duty would have required Laven to conduct a comprehensive exposure evaluation of IRD's office contents so that IRD would have been fully covered for all damages caused by the 2009 fire. Alternatively, IRD argues that Laven agreed to procure full coverage, and that Laven's failure to do so caused IRD's $500,000 shortfall. Laven contests both claims and asks us to affirm the trial court's summary judgment order in all respects.

For the reasons explained below, we hold that factual issues remain concerning the existence of a special relationship between IRD and Laven. Accordingly, we remand for trial on whether Laven had a duty to advise IRD. But we affirm the trial court's grant of summary judgment for ProAssurance that Laven did not breach an implied contract to procure full coverage.

I. **Summary Judgment on Laven's Duty to Advise Was Improper Because Material Questions of Fact Persist on Whether the Parties Had a Special Relationship.**

The designated evidence paints an inconclusive picture about the nature of the parties' relationship, making summary judgment improper as a basis for determining whether Laven had a duty to advise. Usually, the existence of a duty is a question of law decided by courts. Kopczynski v. Barger, 887 N.E.2d 928, 931 (Ind. 2008). But an insurance agent's duty may hinge on the nature of its relationship with the insured, which "turn[s] on factual issues that must be resolved by the trier of fact." Id.; Rhodes v. Wright, 805 N.E.2d 382, 386 (Ind. 2004). The primary factual issue regarding Laven's duty to advise is whether it had a special relationship with IRD, making Laven's duty a mixed question of law and fact. See Dye, 634 N.E.2d at 848. We first consider what facts demonstrate a special relationship, as a matter of law, and we then explain why the designated evidence is unclear on whether Laven and IRD had such a relationship.

A. **A Special Relationship Is Based on the Nature of the Relationship, not Merely Its Length.**

The burden of showing a special relationship rests on the insured. Dye, 634 N.E.2d at 848. All special relationships are long-term, but not all long-term relationships are special. Parker by Parker v. State Farm Mut. Auto Ins. Co., 630 N.E.2d 567, 569 (Ind. Ct. App. 1994), trans. denied. "[I]t is the *nature* of the relationship, not [merely] its length, that invokes the duty to advise." Dye,

5

643 N.E.2d at 848 (emphasis added). Over the past four decades, our Court of Appeals has consistently relied on four factors beyond mere duration to identify a special relationship: whether the agent

> (1) exercise[s] broad discretion to service the insured's needs; (2) counsel[s] the insured concerning specialized insurance coverage; (3) hold[s] oneself out as a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) receiv[es] compensation, above the customary premium paid, for the expert advice provided.

Id. (citing Parker, 630 N.E.2d at 570).[1] However, these factors are not exhaustive, nor is any particular factor dispositive. See id. All of these factors illuminate a single issue: the nature of the agent-insured relationship.

United Farm Bureau Mutual Insurance Co. v. Cook, 463 N.E.2d 522 (Ind. Ct. App. 1984), illustrates when a special relationship exists between the agent and insured. Browning, the agent, had worked with Cook, the insured, for over ten years and was his "insurance man." Id. at 528. Cook regularly asked Browning for coverage but left "the details to Browning's discretion." Id. at 525. One day, Cook asked Browning in person for a policy to cover his project of dismantling and moving a barn from Kentucky to Indiana. Id. The Court of Appeals held that Cook and Browning had a special relationship because Browning's "role went beyond that of a mere agent." Id. at 528. Subsequent Indiana courts examining Cook have also noted the "unusual nature" of Cook's project of dismantling a barn in one state and rebuilding it in another, Parker, 630 N.E.2d at 569 n.2, which required "specialized insurance coverage," id. at 570, "customized to [the insured's] needs," DeHayes Grp., 786 N.E.2d at 783.

By contrast, the absence of a special relationship was illustrated in Cox v. Mayerstein-Burnell Co., 19 N.E.3d 799 (Ind. Ct. App. 2014). There, Cox Pub ("the Pub") approached Clute—an insurance producer for Mayerstein-Burnell Company—to procure a new policy to cover its property. Id. at 802. At an in-person meeting, the Pub presented Clute with details about its property and business and stressed that it "wanted to keep the premiums as low as possible." Id. The

---

[1] See also Meridian Title Corp. v. Gainer Grp., LLC, 946 N.E.2d 634, 637 (Ind. Ct. App. 2011), trans. denied; Myers v. Yoder, 921 N.E.2d 880, 885 (Ind. Ct. App. 2010); Billboards 'N' Motion v. Saunders-Saunders & Assocs., Inc., 879 N.E.2d 1135, 1142 (Ind. Ct. App. 2008), trans. denied; DeHayes Grp., 786 N.E.2d at 782; Court View Centre, L.L.C. v. Witt, 753 N.E.2d 75, 87 (Ind. Ct. App. 2001); Wyrick v. Hartfield, 654 N.E.2d 913, 914 (Ind. Ct. App. 1995).

Pub received two quotes from an insurer for standard casualty and property insurance. Id. The Pub chose the cheaper policy of the two. Id. at 803. The Court of Appeals held there was no special relationship as a matter of law. Id. at 807. It rejected the Pub's argument that Clute "counseled" the Pub during their brief relationship because Clute did not provide "'specific analysis of [the Pub's] insurance needs,'" id. at 806 (quoting Dye, 634 N.E.2d at 848), and the Pub "made the final coverage selection from competing quotes" on "standard casualty and property insurance," id. (citing DeHayes Grp., 786 N.E.2d at 783).

In over thirty years, Cook is the only Indiana decision to find a special relationship between an insurance agent and an insured as a matter of law. And only one appellate court decision has found a material question of fact on the issue. Billboards 'N' Motion v. Saunders-Saunders & Assocs., Inc., 879 N.E.2d 1135, 1143 (Ind. Ct. App. 2008), trans. denied. All other decisions have found no duty to advise as a matter of law because the parties' relationship was a typical agent-insured relationship. E.g., Cox, 19 N.E.3d at 807.

## B. The Designated Evidence Supports Conflicting Inferences on the Existence of a Special Relationship.

Here, it is undisputed that IRD and Laven had a long-term relationship. But it is also undisputed that IRD paid no extra commission to Laven for specialized expertise. Rather, the parties disagree on inferences the Court should draw from the designated evidence concerning the three other special relationship factors—namely, the level of discretion Laven exercised to service IRD's needs, whether Laven counseled IRD concerning "specialized" insurance coverage, and whether Laven held itself out as a highly skilled insurance expert, coupled with IRD's reliance upon the expertise. Dye, 643 N.E.2d at 848. We review the designated evidence de novo, but will resolve any ambiguities in IRD's favor. Hughley, 15 N.E.3d at 1003.

When IRD first opened in 1978, it "purchased all of the insurance coverage that was recommended by Hepler-Smith, including insurance for . . . office contents." IRD typically called Laven three or four times a year, and the parties never met in person until after the 2009 fire. Much of their relationship revolved around the annual policy renewal ritual. Every year, Laven mailed IRD a one-page coverage summary and questionnaire. The questionnaire allowed IRD to both indicate changes to its practice that would affect coverage and express any changes IRD wanted to make. Maureen Lehman (an office administrator at IRD) maintained all of IRD's insurance

7

policies, and she consulted Dr. Robert Lehman (the owner of IRD) before returning the question-naire to Laven. During the final renewal before the fire, Dr. Lehman, not Laven, suggested in-creasing the policy limits. Once Laven received the questionnaire, it made any changes to the policy and returned a new coverage summary with a cover letter instructing IRD (in bold and italicized lettering) to "take a moment to look these policies over and be sure that they have been issued to your liking." But IRD typically did not review the final coverage summaries it received once it submitted the questionnaire.

The parties' correspondence also included marketing materials sent by Laven. Laven reg-ularly held itself out to over 400 dental offices as an "[a]uthorized administrator for Indiana Dental Association insurance plans including professional liability and office property/casualty cover-age." Laven also provided a generic valuation guideline for contents and equipment commonly owned by dental offices in one of the annual questionnaires it sent to IRD. Finally, Laven mailed IRD generic "risk review" newsletters—authored by a third-party publishing company—on a quar-terly basis, one of which said,

> [a] professional insurance agent is trained in risk analysis, which in-volves evaluating risk exposure to measure the potential loss to your business. With your specific business and property in mind, your agent can recommend appropriate insurance coverage. . . . With this expertise, your agent can suggest . . . risk-management products and ensure that you are in compliance with all mandatory regulations. . . . The insurance program developed by your agent will be tailored to your business's unique needs.

The record thus "support[s] conflicting reasonable inferences" about the nature of the par-ties' relationship. Hughley, 15 N.E.3d at 1003 (internal quotation marks omitted). On the one hand, IRD obtained its policy in 1978 at the direction of Hepler-Smith, and Laven continued eliciting information from IRD through annual questionnaires so it could provide continued assistance. Moreover, IRD's policy was to insure highly specialized prosthodontist equipment, and Laven held itself out as being endorsed by the Indiana Dental Association and able to give expertise tailored to IRD's needs. But on the other hand, Hepler-Smith, not Laven, was responsible for rec-ommending coverage in 1978—and the record is unclear whether Laven continued to exercise the same amount of discretion after it merged with Hepler-Smith in 1997. Further, the discretion ex-ercised by Laven is not as extensive as the discretion exercised by the agent in Cook, since IRD

8

continued to decide its own policy limits and list them on the annual questionnaire. Cox, 19 N.E.3d at 807. Although IRD's policy insured specialized equipment, the policy itself was a run-of-the-mill business personal property policy. Id. Laven's self-proclaimed "expertise" was based largely on generic promotional materials drafted by third-party publishers. And the parties never met face to face until after the fire.

Accordingly, the designated evidence does not disprove IRD's claim that Laven had a duty to advise IRD; so, we must conclude that summary judgment was improvidently granted. Hughley, 15 N.E.3d at 1003. Our holding does not mean that every insured may take its insurance agent to trial on the issue of a special relationship merely because the agent uses annual questionnaires, underscores its trade association endorsements, or markets with third-party mailers touting "expertise" and personalized services. But in Indiana, summary judgment is a "high bar," and under the facts of this case, Laven has not "affirmatively *negate[d]*" that its particular long-term relationship with IRD was a special relationship. Id. at 1003–04 (emphasis added). We therefore reverse the trial court's grant of summary judgment for ProAssurance that Laven had no duty to advise.

## II. Laven Did Not Breach Its Duty to Procure Full Coverage Because the Parties Had No Implied Contract Addressing Full Coverage.

IRD seeks to hold Laven responsible for its lack of full coverage by alternatively alleging that Laven breached a contractual duty to procure full coverage. IRD argues that it and Laven had an implied contract for full coverage and that Laven breached this agreement, leaving it with a $500,000 shortfall. While we clarify that IRD may allege a breach of the duty to procure as an implied contract claim, we hold that no such contract exists in this case and affirm summary judgment against IRD on this issue.

### A. Breach of the Duty to Procure May Sound in Both Contract and Tort.

As a threshold matter, Laven argues that IRD's claim is fundamentally an "insurance agent malpractice" claim, and therefore asks this Court to hold that Laven's claim sounds only in tort, never contract. But IRD's interpretation would require that we overturn decades of precedent and overlook recognized principles of insurance law.

Indiana courts have consistently held that agents "may be liable for breach of contract *or* for negligent default in the performance of a duty imposed by contract" when they fail to procure

9

insurance requested by the insured. Stockberger, 182 Ind. App. at 576, 395 N.E.2d at 1279 (emphasis added).[2] To use tort terminology, "one who agrees to procure insurance on behalf of another becomes the agent of the proposed insured and incurs a duty to use reasonable care to procure the desired insurance." Anderson Mattress Co., Inc. v. First State Ins. Co., 617 N.E.2d 932, 939 (Ind. Ct. App. 1993), trans. denied. Under a contract theory, the agent and the insured may come to a "meeting of the minds" on a particular policy and mutually assent to the agent procuring that policy on behalf of the insured— the contract "is not binding if negotiations are incomplete in any material particular [element], or assent of either party is lacking." Stockberger, 182 Ind. App. at 577, 395 N.E.2d at 1279. Once an agreement is established under either theory, the duty to procure is the same.

Laven responds that, as a policy matter, "[t]here is no reason for insurance agent malpractice to be any different than any other professional malpractice." But doctors, attorneys, and accountants are not insurance agents. Agents are intermediaries who act on behalf of insurers (the principal) to facilitate the purchase of a product by the insured from the insurer. See generally 1 New Appleman on Insurance Law Library Edition § 2.01 (2014). We can find only one jurisdiction that has held that insurance agents are not liable in contract. Broad ex rel. Estate of Schekall v. Randy Bauer Ins. Agency, Inc., 749 N.W.2d 478, 483–84 (Neb. 2008). But even that jurisdiction does not prohibit a contract claim for the reasons articulated by Laven. Instead, it rejects the claim in favor of the general agency law principle that an agent is not personally liable for promises that it makes while acting within the scope of its authority granted by the principal (i.e., the insurer). Id. at 484. Thus, Laven presents no compelling reason to abandon longstanding Indiana precedent.

Laven also raises the practical concern that implied contracts like the one alleged by IRD violate the Statute of Frauds because they cannot be performed within a year. Ind. Code § 32-21-1-1(b)(5) (2008). But the absence of a writing is irrelevant in this case. As discussed in the prior section, IRD's requests for additional coverage occurred during the annual renewal ritual, and Laven responded to those requests with an updated coverage summary shortly thereafter. These

---

[2] See also Dreibelbiss Title Co., Ins. v. MorEquity, Inc., 861 N.E.2d 1218, 1222 (Ind. Ct. App. 2007), trans. denied; Bulla v. Donahue, 174 Ind. App. 123, 126, 366 N.E.2d 233, 236 (1977); 4 Couch on Insurance 3d, §46:49; 1 New Appleman on Insurance Law Library Edition § 2.05[2][e], § 2.06[2], [4].

transactions were always performed well within a year. Thus, under these circumstances, the absence of a writing is not dispositive. See Stockberger, 182 Ind. App. at 577, 395 N.E.2d at 1279 (recognizing that contracts to procure insurance may be "oral or written").

## B. IRD and Laven Had No Meeting of the Minds on Full Coverage.

While we recognize that IRD may bring a contract claim against Laven, we affirm summary judgment against IRD because the designated evidence, even taken in a light most favorable to IRD, Hughley, 15 N.E.3d at 1003, shows no meeting of the minds on the issue of full coverage.

An oral or written contract to procure insurance requires a meeting of the minds on five critical elements: "(1) the subject of the insurance; (2) the risk or peril insured against; (3) the amount of coverage; (4) the limit and duration of the risk; and (5) the amount of the premium to be paid." Stockberger, 182 Ind. App. at 577, 395 N.E.2d at 1279; see also Billboards 'N' Motion, 879 N.E.2d at 1139. "A contract to procure insurance can be implied based on past dealings between the parties," but it cannot arise "unless the agent ha[s] sufficiently definite directions from the [insured] to enable the agent to consummate the final insurance contract." Stockberger, 182 Ind. App. at 577, 395 N.E.2d at 1279; see also 1 New Appleman on Insurance Law Library Edition § 2.05[3][a].

Although IRD and Laven have a lengthy relationship, none of the designated evidence suggests that IRD ever requested "full coverage." Every increase in the policy limit came as a result of IRD requesting discrete increases of coverage and Laven subsequently procuring those increases. Thus, the parties' course of dealings provides no basis from which to infer an implied contract for Laven to procure *full* coverage. Nor can IRD identify a single conversation or interaction with Laven from which we could identify the five critical elements necessary to infer a meeting of the minds on full coverage. Stockberger, 182 Ind. App. at 577, 395 N.E.2d at 1279. Accordingly, we affirm the trial court's grant of summary judgment on this issue.

## Conclusion

The designated evidence here paints an inconclusive picture regarding the nature of Laven's and IRD's relationship. Thus, genuine issues of material fact remain regarding the existence of a special relationship, and consequently a duty to advise. But the record is clear that Laven had no duty to procure full coverage, because there is no evidence of any discussion of an implied contract for Laven to procure full coverage for IRD's office contents, much less a meeting of the minds.

We therefore reverse summary judgment regarding Laven's duty to advise but affirm summary judgment against IRD regarding Laven's contractual duty to procure full coverage. On remand, the parties may continue to litigate Laven's duty to advise; Laven's alleged contractual duty to procure $350,000 in office contents coverage; and ProAssurance's vicarious liability for Laven's alleged wrongdoing.

Dickson, Rucker, David, and Massa, JJ., concur.