

FILED
Jun 05 2015, 11:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

David F. Hurley
Hurley & Hurley, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Mark D. Gerth
Jeffrey D. Hawkins
Michael Wroblewski
Kightlinger & Gray, LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jake Gruber, Jill Sherman, & Jake Gruber b/n/f Jill Sherman, *Appellants-Plaintiffs,* <br><br> v. <br><br> YMCA of Greater Indianapolis, Ruth Lilly YMCA Outdoor Center, & Flat Rock River YMCA Resident Camp, *Appellees-Defendants.* | June 5, 2015 <br><br> Court of Appeals Case No. 49A02-1410-CT-713 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Heather A. Welch, Judge <br><br> Case No. 49D06-1304-CT-14317 |

**Vaidik, Chief Judge.**

## Case Summary

[1] An eleven-year-old boy was at Flat Rock River YMCA camp when a pig—which had never injured anyone or exhibited any dangerous propensities—

stuck its head between the bars of its pen and grabbed the boy's hand, causing injuries. The boy and his mother sued the camp, and the camp filed a motion for summary judgment. The trial court granted summary judgment in favor of the camp.

On appeal, the boy and his mother acknowledge the general rule that owners of domestic animals are liable only if the owner knows or has reason to know that the animal has dangerous propensities. Nevertheless, they ask us to change the standard for liability of owners of domestic animals to that of strict liability when the animal is not a cat or dog. Because Indiana Supreme Court precedent is clear that this general rule applies to all domestic animals—and not just cats and dogs—we decline their invitation to alter the standard. We therefore affirm the trial court's entry of summary judgment in favor of the camp.

# Facts and Procedural History

On April 19, 2011, eleven-year-old Jake Gruber was a participant at Flat Rock River YMCA Camp in St. Paul, Indiana. Jake's mother, Jill Sherman, was a chaperone. Marcus Loidolt, who worked as a naturalist at the camp, owned a pig that lived on YMCA's premises nine months of the year. Marcus had owned the pig for six years, and the pig had never injured anyone or exhibited any dangerous propensities. In fact, the pig was regularly allowed to roam freely on YMCA's premises, and there had never been an incident.

On April 19, Marcus took a group of twelve children, including Jake, into the pig's pen. The pen had three bars, but the pig could stick its nose through the bars. While inside the pen, Marcus dumped food out of a bucket so the children could watch the pig eat and pet it. After the pig ate, Marcus led the children out of the pen and locked the gate. Some of the children, including Jake, continued to watch the pig from outside the pen while Marcus was still inside the pen with the gate locked. While Jake was less than an arm's length away from the pen, the pig lunged at Jake, stuck its head between the bars, and "grabb[ed]" Jake's hand. Appellees' App. p. 32 (the plaintiffs' complaint). When the pig lunged at Jake, he was not attempting to feed or pet the pig, and the pig's feeding bowl was not near him. The pig did not show any signs of agitation or aggression on April 19.

Jake was taken to the emergency room at Major Hospital in Shelbyville, Indiana. His hand was x-rayed, he was prescribed antibiotics, and he was told to follow up with his doctor.

Nearly two years later, Jake and his mother (collectively, "the plaintiffs") filed a complaint against YMCA of Greater Indianapolis, Ruth Lilly YMCA Outdoor Center, and Flat Rock River YMCA Resident Camp (collectively, "the YMCA defendants"). They alleged that the "attack of the pig was the result of the negligence and carelessness of the Defendants" and that as a result of the attack, Jake "suffered and incurred medical expenses, pain and suffering, and other damages[,] all of which may continue in the future." *Id.* at 6. They also alleged that the YMCA defendants "knew or should have known that the pig

had dangerous propensities and knew or should have known of the pig's natural propensities." *Id.*

[7] The YMCA defendants filed a motion for summary judgment. In support of their motion, the YMCA defendants designated the following evidence: (1) the plaintiffs' complaint; (2) an affidavit from the pig's owner, Marcus; and (3) the plaintiffs' answers to their interrogatories. *Id.* at 3. The plaintiffs filed a response to the YMCA defendants' motion for summary judgment and designated their (1) complaint and (2) interrogatory answers.[1] *Id.* at 27. A hearing was held. In September 2014, the trial court entered an extensive order granting summary judgment in favor of the YMCA defendants. The order provides, in part:

> 21. [The plaintiffs argue] that a genuine issue of material fact exists as to whether the animal at issue is domesticated. However, Indiana Code § 15-17-2-26 defines a domestic animal as "an animal that is not wild," and specifically includes swine. This Court finds, and [the plaintiffs] later concede[d] at [the summary-judgment hearing], that the pig at issue is a domesticated animal.
>
> 22. In *Forrest v. Gilley*, 570 N.E.2d 934, 935 (Ind. Ct. App. 1991), the Indiana Court of Appeals held that the owner of a domestic animal is not liable for injuries caused by the animal unless the animal had dangerous propensities known, or which should have been known, to the owner. . . . If an individual animal lacks dangerous propensities, "the rule is simply that the owner of a domestic animal is bound to

---

[1] The only items in Appellants' Appendix are the CCS and the trial court's order granting summary judgment in favor of the YMCA defendants. Appellees then filed their own appendix in order to include their designation of evidence and other documents, including the plaintiffs' response to their motion for summary judgment (which included the plaintiffs' designation of evidence).

know the natural propensities of the particular class of animals to which it belongs." *Id.* . . .

23. This Court finds that there is no genuine issue of material fact as to [the YMCA defendants'] lack of actual knowledge of the pig's dangerous propensities. The record shows that [the YMCA defendants] were unaware of the pig's dangerous propensities—they had never received any complaints or had any previous incidents with the pig at issue. Furthermore, [the plaintiffs] have failed to present any evidence that [the YMCA defendants] had actual knowledge of the dangerous or vicious propensities of the animal.

24. In regards to [the YMCA defendants'] constructive knowledge of the pig's dangerous propensities, [the plaintiffs argue] that [the YMCA defendants] have failed to address the natural propensities of the class of animal that the pig belongs to and, therefore, [a] genuine issue of material fact exists as to whether the precautions taken were reasonable. . . . Here, [the plaintiffs have] not only failed to allege or demonstrate any dangerous propensity on [the] part of the animal, but [they have] also failed to allege or demonstrate that the injuries stemmed from a dangerous propensity common to the breed of swine the pig belongs to, such as the propensity to bite. . . . [T]his Court finds that there is no genuine issue of material fact as to [the YMCA defendants'] lack of constructive knowledge of the pig's dangerous propensities.

Appellants' App. p. 12-14 (citation omitted). Accordingly, the trial court entered summary judgment in favor of the YMCA defendants.

[8] The plaintiffs now appeal.

# Discussion and Decision

[9] The plaintiffs contend that the trial court erred in entering summary judgment in favor of the YMCA defendants. We review an order for summary judgment de novo, which is the same standard of review applied by the trial court. *Ind. Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 264 (Ind.

2015).  The moving party must "affirmatively negate an opponent's claim" by demonstrating that the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (quotation omitted).  The burden then shifts to the nonmoving party to demonstrate a genuine issue of material fact. *Id.* In reviewing the record, we construe all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment is inappropriate when genuine factual issues persist—that is, when the designated evidence 'support[s] conflicting reasonable inferences.'" *Id.* (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)).

[10]    The Indiana Supreme Court addressed a dog owner's liability for injuries that his mixed-breed sheepdog—which had displayed no vicious tendencies in the past—caused to a passerby in *Poznanski ex rel. Poznanski v. Horvath*, 788 N.E.2d 1255 (Ind. 2003).  Our Supreme Court set forth the law on the liability of owners of domestic animals as follows:

> When wild animals are kept as pets, an owner is liable for injuries caused by the animal.  This is so even if the owner had no prior knowledge of the animal's propensity to cause harm, and even if the owner has exercised the utmost care in preventing harm.  In essence, strict liability is imposed on owners of wild animals.  *Owners of domestic animals may also be held liable for harm caused by their pet but only if the owner knows or has reason to know that the animal has dangerous propensities. Klenberg v. Russell*, 125 Ind. 531, 25 N.E. 596, 597 (1890) ("[T]he owners of creatures which, as a species, are harmless and domesticated, and are kept for convenience or use, such as dogs . . . are not liable for injuries willfully committed by them unless he is proved to have had notice of the inclination of the particular animals complained of to commit such injuries.").  As with wild animals this liability also attaches regardless of the amount of care exercised by the owner.  However, unlike with wild animals, when the owner of a dog

has knowledge of its dangerous propensities, "[the] rules of liability are based upon negligence and not strict liability." . . .

> In certain instances, a cause of action in negligence can survive without the owner's actual knowledge of the animal's dangerous propensities. Indeed, such knowledge may even be constructive. Nonetheless, when an owner does not know of his animal's dangerous propensities, the rule is not that the jury may infer or impute such knowledge. Rather, "the rule is that the owner is bound to know the natural tendencies of the *particular class* of animals to which [the] dog belongs." If the propensities of the class to which the dog belongs are the kind which one might reasonably expect would cause injury, then the owner must use reasonable care to prevent injuries from occurring.

*Id.* at 1259 (first emphasis added, quotations and citations omitted). The Court concluded that because there was no evidence that the owner had any knowledge that his dog exhibited dangerous or vicious propensities and there was no evidence that the breed to which the dog belonged exhibited dangerous or vicious propensities, the jury could not infer that the owner knew that his dog was dangerous or vicious. *Id.* at 1260.[2]

[11]   Here, the plaintiffs concede that pigs are domestic animals and that the general rule is that owners of domestic animals are liable for injuries caused by the animal only if the owner knows or has reason to know that the animal has dangerous propensities. *See* Appellant's Br. p. 5 (citing Ind. Code § 15-17-2-26 & *Forrest v. Gilley*, 570 N.E.2d 934 (Ind. Ct. App 1991), *reh'g denied*, *trans.*

---

[2] The plaintiffs cite the Indiana Supreme Court's opinion in *Cook v. Whitsell-Sherman*, 796 N.E.2d 271 (Ind. 2003). However, the issue in that case was the liability of owners whose dogs bite mail carriers and certain other public servants. The issue in *Cook* was governed by a statute that "was intended to alter th[e] common[-]law framework if the victim is a letter carrier" by removing the presumption that a dog is harmless unless it acts otherwise. *Id.* at 275.

*denied*).  The trial court found that "[the plaintiffs have] not only failed to allege or demonstrate any dangerous propensity on [the] part of the animal, but [they have] also failed to allege or demonstrate that the injuries stemmed from a dangerous propensity common to the breed of swine the pig belongs to, such as the propensity to bite."  Appellants' App. p. 13.  Indeed, the evidence designated at summary judgment shows that Marcus had owned the pig for six years, and the pig had never injured anyone or exhibited any dangerous propensities, including on the day in question.  And the plaintiffs designated no evidence that the particular breed to which the pig belonged has dangerous propensities.

[12]  Nevertheless, the plaintiffs argue that pigs, although domestic animals, "can't be compared to a dog or cat which provide companionship as someone's pet." Appellants' Br. p. 6.  As such, they ask us "to impose a strict[-]liability standard when the owner of a domesticated animal exposes someone to an abnormal risk."  *Id.* at 6.  They claim that without "such a standard, people like [them] would have no recourse for potential serious injuries sustained when they are exposed to an abnormal risk by a domesticated animal."  *Id.*  We, however, decline the plaintiffs' invitation to impose a strict-liability standard on owners of domestic animals that are not cats or dogs.  This is because our Supreme Court has made clear that this rule applies to all domestic animals, not just cats and dogs.  *See Poznanski*, 788 N.E.2d at 1259 ("Owners of *domestic animals* may also be held liable for harm caused by their pet but only if the owner knows or has reason to know that *the animal* has dangerous propensities." (emphases added));

*see also Einhorn v. Johnson*, 996 N.E.2d 823, 831 (Ind. Ct. App. 2013) (noting that horses are domestic animals and that owners of domestic animals are not liable for injuries caused by the animal unless the animal had dangerous propensities known, or which should have been known, to the owner), *reh'g denied*, *trans. denied*. Because the plaintiffs have put forth no convincing reason to impose strict liability on owners of domestic animals that are not cats or dogs, we affirm the trial court's grant of summary judgment in favor of the YMCA defendants.

[13] Affirmed.

Kirsch, J., and Bradford, J., concur.