## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 27 2018, 5:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew J. Thompson
Thompson Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Timothy J. Abeska
Barnes & Thornburg LLP
South Bend, Indiana

Alice J. Springer
Barnes & Thornburg LLP
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John E. Gray, Jr. and Tammera M. Gray, | April 27, 2018 |
| *Appellants-Defendants,* | Court of Appeals Case No. 20A03-1612-MF-2885 |
| v. | Appeal from the Elkhart Superior Court |
| Wells Fargo Bank, NA, | The Honorable Stephen R. Bowers, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 20D02-1006-MF-257 |

**Pyle, Judge.**

# Statement of the Case

John E. Gray, Jr., and Tammera M. Gray (collectively, "the Grays") appeal: (1) the trial court's denial of their motion to amend their counterclaim in a mortgage foreclosure proceeding; and (2) the trial court's grant of partial summary judgment on their original counterclaim in favor of the claimant, Wells Fargo Bank, N.A. ("Wells Fargo"). Because we conclude that: (1) the trial court did not abuse its discretion when it denied the Grays' motion to amend their counterclaim as their requested amendment was futile; and (2) the trial court did not err in granting summary judgment because there were no genuine issues of material fact, we affirm the trial court's decision.

We affirm.

# Issues

1. Whether the trial court abused its discretion when it denied the Grays' motion to amend their counterclaim.

2. Whether the trial court erred when it granted partial summary judgment in favor of Wells Fargo.

# Facts

On December 3, 2002, the Grays executed a promissory note ("Note") to Wells Fargo Home Mortgage in the amount of $175,500.00. As collateral for the Note, they also executed a mortgage ("Mortgage") on their home in Elkhart, Indiana.

[4] Several years later, on June 24, 2010, Wells Fargo filed a complaint to foreclose the Mortgage. The Grays filed their answer and a counterclaim in which they raised two breach of contract claims and an abuse of process claim. In their first breach of contract claim, they alleged that they had entered into a contract with Wells Fargo in 2009, in which Wells Fargo had agreed to forbear on their Mortgage payments if the Grays paid $531.00. According to the Grays, they complied with this agreement by paying $531.00, but Wells Fargo breached the agreement when it nevertheless filed its foreclosure complaint.

[5] In their second breach of contract claim, the Grays alleged that, after they had paid the $531.00, Wells Fargo had told them that it would consider the mortgage payments current if they paid an additional $2,531.00. The Grays claimed that they paid the $2,531.00, yet Well Fargo proceeded with its mortgage foreclosure claim.

[6] These two breaches of contract were the basis for the Grays' abuse of process claim. Specifically, the Grays argued that Wells Fargo had wrongfully brought its foreclosure action "for the ulterior and wrongful purpose of increasing their [sic] profit after reaching several agreements for repayment of the mortgage, accepting the agreed upon funds and then determining that additional profit could be made by breaching the agreement and suing the [Grays]." (Wells Fargo's App. Vol. 2 at 60).

[7] During discovery, Wells Fargo served the Grays with a request for admissions. In their response to the request for admissions, the Grays admitted that they did

not have a copy of the agreements in which Wells Fargo had allegedly agreed to forbear on the mortgage payments if the Grays paid $531.00 and consider the mortgage payments current if the Grays paid $2,531.00.

[8]     On March 8, 2016, Wells Fargo filed a motion for partial summary judgment seeking summary judgment on only the Grays' counterclaims. It argued that there were no genuine issues of material fact on the breach of contract claims because the Grays had admitted that they did not have copies of the agreements that Wells Fargo had allegedly violated. As for the Grays' abuse of process claim, Wells Fargo asserted that there were no genuine issues of material fact because the evidence demonstrated that it had used the judicial process properly to enforce its legal right to foreclose the mortgage.

[9]     On March 9, 2016, the Grays moved for leave to amend their abuse of process counterclaim to allege that Wells Fargo had engaged in a banned practice of "dual tracking"—a practice "wherein the creditor is forbidden to move mortgage litigation forward while a completed loan modification application is pending and under consideration." (The Grays' App. Vol. 4 at 4-5). The Grays also sought to add an abuse of process allegation that Wells Fargo had taken their $2,531.00 payment but failed to return it or credit it to their account.[1]

---

[1] At the hearing, the Grays later argued that Wells Fargo did return the payment four years after it was paid. However, this detail does not affect our analysis, so we will examine the Grays' argument as it was stated in their proposed amendment.

[10] The trial court conducted a hearing on Wells Fargo's motion for partial summary judgment and the Grays' motion to amend their counterclaim on June 16, 2016. At the hearing, the Grays conceded that the trial court should grant Wells Fargo's motion for partial summary judgment on their breach of contract claims. Thereafter, the court entered an order denying the Grays' motion to amend their counterclaim, reasoning that their proposed amendment was futile because the claims they wished to add were untimely. The trial court also granted summary judgment in favor of Wells Fargo on all of the Grays' original counterclaims, including the original abuse of process claim. In support of its grant of summary judgment on the abuse of process claim, the trial court reasoned that there was no evidence that Wells Fargo had used the judicial process for an illegitimate purpose. The Grays now appeal.

## Decision

[11] On appeal, the Grays argue that the trial court: (1) abused its discretion when it denied their motion to amend their counterclaim; and (2) erred when it granted Wells Fargo's motion for summary judgment on their original abuse of process counterclaim. We will address each of these issues in turn.

### 1. Motion to Amend

[12] First, the Grays argue that the trial court abused its discretion when it denied their motion to amend their abuse of process counterclaim to allege that Wells Fargo had engaged in "dual tracking" and had wrongfully withheld their $2,531.00 payment. Indiana Trial Rule 15 governs the amendment of pleadings and provides, in pertinent part:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty [30] days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires.

[13] Wells Fargo filed a responsive pleading to the Grays' counterclaim and also declined to consent to the Grays' proposed amendment. Accordingly, the Grays may only amend their pleading "by leave of court." T.R. 15. In such circumstances, the trial court "retains broad discretion in granting or denying amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion." *MAPCO Coal, Inc. v. Godwin*, 786 N.E.2d 769, 777 (Ind. Ct. App. 2003). "'In determining whether an abuse has occurred, we look to a number of factors, which include undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment.'" *Id.* (quoting *Nyby v. Waste Mgmt., Inc.* 725 N.E.2d 905 (Ind. Ct. App. 2000), *trans. denied*) (internal quotations omitted).

[14] Here, the trial court concluded that it was futile for the Grays to amend their abuse of process claim because the allegations they wished to add were no longer viable claims. The court noted that a cause of action for an abuse of process accrues when the act complained of is committed and carries a two-year

statute of limitations. *See Yoost v. Zalcberg*, 925 N.E.2d 763, 771 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. The acts that the Grays challenged in their proposed amendment were Wells Fargo's act of filing a foreclosure action while a loan modification application was pending and Wells Fargo's alleged failure to give credit to the Grays for the $2,531.00 payment they had made or to return the payment. Because these actions occurred in 2010, the trial court concluded that the statute of limitations on the Grays' proposed abuse of process amendment had already run by the time that they moved to amend their counterclaim six years later in 2016. Thus, the proposed amendment was futile.

[15] The Grays challenge this conclusion by asserting that Wells Fargo's failure to credit or return their $2,531.00 payment was a continuing wrong that tolled the statute of limitations for the abuse of process counterclaim. Courts have recognized two categories of cases in which the continuing wrong doctrine applies:

> "The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation.
>
> The second type of continuing violation is one in which an initial violation, outside of the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations."

*Yoost*, 925 N.E.2d at 771 (quoting *Marion Cty. v. State*, 888 N.E.2d 292, 299 (Ind. Ct. App. 2008) (citations omitted)).  The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury.  *Id.*  When the doctrine attaches, the statute of limitations begins to run at the end of the continuing wrongful act.  *Id.*  "'In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature.'"  *Id.* (quoting *Palmer v. Gorecki*, 844 N.E.2d 149, 156 (Ind. Ct. App. 2006), *trans. denied*).  The continuing wrong doctrine is not an equitable doctrine but rather defines when an act took place.  *Id.*

[16]     Here, the trial court cited to our decision in *Yoost*, in which we addressed a request to apply the continuing violation doctrine to an abuse of process claim.  *See Yoost*, 925 N.E.2d at 771.  In *Yoost*, Zalcberg filed a mortgage foreclosure claim against Yoost, and Yoost filed several counterclaims against Zalcberg.  *Id.* at 767.  Zalcberg later amended his complaint to argue that Yoost's counterclaims were fraudulent and an abuse of process.  *Id.*  However, the trial court granted Yoost's summary judgment argument that the abuse of process counterclaim was untimely.  *Id.*

[17]     On appeal, Zalcberg argued that his abuse of process claim was not untimely because the continuing wrong doctrine applied.  *Id.* at 771.  In our decision, we declined to apply the continuing wrong doctrine to an abuse of process claim, noting that no Indiana appellate court had ever done so.  *Id.*  We also reasoned that the injury of which Zalcberg complained was Yoost's act of filing his counterclaim.  *See id.*  We declined to find a continuing injury for that act

"[d]espite the fact that Yoost's general maintenance of his lawsuit may arguably continue to impact Zalcberg." *Id.*

[18] In the instant case, the Grays have not directed us to any cases since *Yoost* in which a court has applied the continuing wrong doctrine to an abuse of process claim. Accordingly, as in *Yoost*, we decline to apply the continuing wrong doctrine here. We also note that, as in *Yoost*, even if the Grays have suffered a continuing *impact* related to their loss of $2,531.00, that continuing impact was based on one injury—Wells Fargo's alleged failure to credit their account or return the payment when the bank received it. Such an injury does not fall into either of the two categories of cases in which the continuing wrong doctrine applies. *See Yoost*, 925 N.E.2d at 771.

[19] Because we find that the continuing wrong doctrine does not apply here, we agree with the trial court that the abuse of process claims the Grays wished to add were not timely, and, therefore, their requested amendment was futile. Accordingly, we conclude that the trial court did not abuse its discretion when it denied the Grays' motion to amend their counterclaim.[2] *See MAPCO Coal, Inc.*, 786 N.E.2d at 777 (noting that futility of an amendment is a factor in determining whether the trial court abused its discretion in denying a motion to amend a pleading).

---

[2] Based on this conclusion, we need not address the merits of the Grays' dual tracking argument.

## 2. Abuse of Process

Next, the Grays argue that the trial court erred when it granted Wells Fargo's motion for summary judgment on their original counterclaim in favor of Wells Fargo. They do not challenge the trial court's grant of summary judgment on their two breach of contract claims, so we will only address their argument that the trial court erred when it granted summary judgment on their abuse of process claim.

Preliminarily, we note that we review an order for summary judgment de novo, which is the same standard of review applied by the trial court. *Miller v. Town Bd. Sellersburg*, 88 N.E.3d 217, 218 (Ind. Ct. App. 2017). The moving party must "'affirmatively negate an opponent's claim' by demonstrating that the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Ind. Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 264 (Ind. 2015), *reh'g denied*). The burden then shifts to the nonmoving party to demonstrate a genuine issue of material fact. *Id.* When deciding whether the trial court erred in granting summary judgment, we consider only the evidence that the parties specifically designated to the trial court. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts regarding the existence of a material issue against the moving party. *Id.*

A party claiming abuse of process must show a misuse or misapplication of process for an end other than that which it was designed to accomplish.

*Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016), *trans. denied.* The two elements of abuse of process are: (1) ulterior purpose or motive; and (2) a willful misuse of process not proper in the regular conduct of the proceedings. *Id.* "There is no basis for an abuse of process claim if legal process is used to accomplish an outcome that the process was designed to accomplish. The purpose for which the process is used is the only thing of importance." *Id*. "'If a defendant's acts are procedurally and substantively proper under the circumstances, then his intent is irrelevant.'" *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1209 (Ind. Ct. App. 2017) (quoting *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005) (internal quotations omitted), *trans. denied*). Unlike a malicious prosecution action, an action for abuse of process does not necessarily require proof that the action was brought without probable cause or that the action terminated in favor of the party alleging abuse of process. *Waterfield*, 61 N.E.3d at 328.

[23] The Grays argue that the trial court erred when it granted Wells Fargo's motion for summary judgment on their abuse of process claim because it was an abuse of process for Wells Fargo to accept their payment of $2,531.00 yet continue its mortgage foreclosure action. However, Wells Fargo established in its motion for partial summary judgment that it had a contractual right to foreclose on the Grays' mortgage when the Grays defaulted. The Grays did not designate any evidence that their $2,531.00 payment cured their default under the mortgage. Accordingly, Wells Fargo was using the mortgage foreclosure process for the outcome it was designed to accomplish—recovering the money owed under the

Note that was secured by the Mortgage. As this was a legitimate use of process, Wells Fargo did not commit an abuse of process. *See E. Point Bus. park, LLC v. Private Real Estate Holdings, LLC*, 49 N.E.3d 589, 605 (Ind. Ct. App. 2015) (holding that the use of the mortgage foreclosure process to secure repayment of a loan balance was a legitimate use of process, not an abuse of process). Any ulterior motive that Wells Fargo had when it requested the $2,531.00 payment is irrelevant. *See id.* (noting that any ulterior motive is irrelevant if a use of process is legitimate). Therefore, the trial court did not err when it granted Wells Fargo's motion for summary judgment on the Grays' abuse of process claim.

[24] Affirmed.

Riley, J., and Robb, J., concur.