**MAPCO COAL INC., and White County Coal Corp., Appellants–Plaintiffs,**

v.

**Steven J. GODWIN, Appellee–Defendant.**

**No. 65A05–0204–CV–172.**

Court of Appeals of Indiana.

April 17, 2003.

Elizabeth F. Bird, Stoll Keenon & Park LLP, Henderson, KY, Attorney for Appellants.

Beth Ann Folz, McFadin Higgins & Folz, Mt. Vernon, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

MAPCO Coal, Inc. and White County Coal Corporation (referred to collectively as MAPCO) filed a complaint against Steven J. Godwin to recover a long-term disability overpayment made to Godwin in the amount of $24,243.44. MAPCO appeals following the trial court's entry of judgment, pursuant to a jury verdict, that assessed MAPCO's damages to be zero. MAPCO presents the following consolidated and restated issues for review:

1. Did the trial court abuse its discretion by denying MAPCO's Motion to Amend Complaint filed approximately three weeks before trial?

2. Did the trial court abuse its discretion when it denied MAPCO's motion to correct error, finding that the jury verdict was within the scope of the evidence?

We affirm in part, reverse in part, and remand.

The undisputed facts reveal the following.[1] MAPCO is in the business of operating a coal mine in White County, Illinois. Godwin was a coal miner employed by MAPCO from November 1984 until June 1996. On or about March 13, 1996, Godwin suffered a heart attack. Due to his heart condition, he was no longer able to work and his last day of employment was June 10, 1996.

On August 5, 1996, Godwin applied for benefits under the MAPCO Coal Inc.'s Subsidiaries Disability Benefit Plan (the Plan). As part of his application for long-term disability benefits, Godwin completed and signed an Employee's Statement and signed a Reimbursement Agreement. The Reimbursement Agreement provided:

In consideration of the MAPCO Inc. Long Term Disability Plan ("Plan") making monthly advances, if it is ultimately determined that I am entitled to receive Social Security benefits, Worker's Compensation benefits or Black Lung benefits for the disability for which reduction was not made under the non-duplication provision of the MAPCO Inc. Long Term Disability Plan, or if I receive any overpayment from the Plan by a mistake of fact, I agree to repay such overpayment to the Plan and I authorize the Plan to withhold and apply such overpayment to any benefits which may hereafter become payable by my Employer to me, including wages.

I understand that after 3 monthly LTD payments have been made, the Plan will estimate my Social Security Award and/or Worker's Compensation award and commence applying the non-duplication provisions of the the (sic) Plan. I understand that I must apply for a Social Security Disability Award. If I am denied such benefit by the Social Security Administration, I agree to appeal immediately and pursue my appeal until I receive a second denial (or award). I understand that both letters of denial from the Social Security Administration must be furnished to the Plan Administrator in order to avoid the estimated offset.

If I receive a Social Security disability award, Worker's Compensation award or Black Lung award, upon my initial application or as a result of my appeal, I agree to inform the Plan Administrator immediately.

*Appellants' Appendix* at 82.

By letter dated September 17, 1996, the Plan's administrator advised Godwin that

---

1. The parties submitted detailed stipulations of fact to the jury and ten additional joint exhibits.

he had been approved for long-term disability benefits. Effective September 11, 1996, Godwin began receiving disability benefits in the amount of $1,470.73 per month, which represented fifty percent of Godwin's basic monthly earnings at the time of his disability.

Thereafter, Godwin applied for Social Security Disability Benefits and received a denial. As required under the Plan, Godwin appealed. He then received a second denial. Although he was no longer required under the Plan to seek Social Security benefits, Godwin hired an attorney and proceeded with a second appeal. Following this third attempt, Godwin was advised on January 10, 1998 that he had been awarded Social Security Disability benefits retroactive to September 1996. As stated in the Notice of Award, the total amount of past-due benefits was $19,713 for September 1996 through December 1997. Godwin, however, received two payments for past-due benefits totaling only $15,713, because the Social Security Administration withheld $4000 to pay Godwin's attorney directly.[2] At this time, Godwin also began receiving monthly disability benefits from Social Security. Godwin's initial Social Security benefit was $1202 per month.[3]

An application for Social Security Dependent Benefits was also made on behalf of Godwin's two children, Zachary S. Godwin and Andrea J. Godwin. By separate notices, dated February 8, 1998, Social Security Dependent Benefits were awarded to Zachary and Andrea. Each award included future monthly payments of $315 and a $5,238 payment for past-due benefits. For the majority of the relevant time period, Zachary and Andrea did not reside with Godwin. Rather, they resided with Godwin's ex-wife, Perry Huddleston, and dependent benefits were sent directly to her home. From August 1999 through April 2001, however, Zachary resided with Godwin, and Godwin received the monthly dependent benefits for Zachary during this time.

Godwin stopped receiving payments under the Plan following his award of Social Security benefits in January 1998. MAPCO then sought reimbursement from Godwin for overpayment of benefits. Godwin made one payment to MAPCO in the amount of $268.73 on December 8, 1998. Thereafter, on February 18, 1999, MAPCO initiated the present action to recover overpayment in the amount of $24,243.44.[4]

Following a failed attempt at mediation and the denial of each party's motion for summary judgment, the cause was on course to proceed to jury trial on December 4, 2001 (nearly three years after the initial complaint). Less than three weeks before trial,[5] MAPCO filed a motion to amend the complaint so as to include ref-

---

2. In the Notice of Award, the Social Security Administration explained the past-due benefits withheld as follows:

 Because of the law, we usually withhold 25 percent of total past-due benefits to pay an approved lawyer's fee. We withheld $4,928.25 from your past-due benefits to pay your lawyer. If we are not asked to review the amount of the fee, we will pay your lawyer $4,000.00 from the benefits we withheld. We will pay you the balance of the amount we withheld.

 *Appellants' Appendix* at 87. Thus, Godwin initially received a payment of $14,784.75 and later received an additional $928.25 from the Social Security Administration.

3. Pursuant to the terms of the Plan, the amount of the initial monthly benefit is used in the computation of long-term benefits under the Plan, regardless of subsequent cost of living increases.

4. This amount represents the total benefits paid to Godwin under the Plan minus the payment made by Godwin to MAPCO.

5. On November 14, 2001.

erence to a worker's compensation settlement that Godwin had received from White County Coal (i.e., MAPCO) in January 1998 as the result of an unrelated foot injury that occurred in 1994. Godwin objected to the amendment. Following a hearing on November 28, 2001, the trial court denied the motion, finding that amendment at this time would place an unreasonable burden upon Godwin.

The jury trial commenced on December 4, 2001. At trial, the parties stipulated that the Plan and the Summary Plan Description governed the respective liability of the parties. The parties presented relatively brief testimony as to their respective interpretation of certain provisions of the Plan. The key provisions of the Plan discussed at trial are Sections 6.3 and 6.4(A). Section 6.3 defines the amount of monthly disability payments that a plan participant is entitled to receive. Section 6.3 provides that monthly payments "shall be equal to 50% of the Participant's Basic Monthly Earnings less the aggregate of any 'Other Monthly Income Benefits', as defined in Section 6.4, *received by the Participant* in that month." *Appellants' Appendix* at 45 (emphasis supplied). Section 6.4(A) in turn defines Other Monthly Income Benefits to include:

(a) any amount of replacement income paid to the Participant under any plan or program of an Employer other than the Plan;

(b) any amount payable to the Participant *for loss of time* under any present or future law of the United States, or any political subdivision thereof, pertaining to any occupational disease, *worker's compensation (including compromise or redemption settlements )*, unemployment compensation, cash sickness benefits or similar benefits *payable for loss of time on account of disability, ...;*

(c) *any Social Security Benefit payable to, or with respect to, the Participant on account of his disability under the Federal Social Security Act, including additional benefits payable on account of the presence of dependents ...;*

\* \* \*

(h) 50% of the total amount, exclusive of reimbursements for medical services or supplies and exclusive of costs of the recovery, the Participant shall receive from any third party in connection with an illness or injury which shall have contributed to his Total Disability.

*Appellants' Appendix* at 46–47 (emphases supplied).

The Summary Plan Description, which is provided to all employees, sets forth the following questions and answers:

**III–1. If I qualify for long term disability payments, how will the amount of my monthly payment be determined?**

Your monthly income benefit under the long term disability part is designed to provide you, in conjunction with certain other income you may receive, with 50% of your basic monthly earnings....

**III–9. Will my long term disability payments be reduced by other payments or benefits?**

Your payments under the Plan are reduced by any of the following kinds of payments you receive:

· worker's compensation payments attributable to lost wages, to the extent those payments are not used to reduce your pension benefits;

· Social Security disability payments (excluding cost of living increases made

effective after your payments under the Plan commenced) and other disability payments; other Social Security benefits (excluding cost of living increases . . .) including dependents' benefits;

* * *

*Appellants' Appendix* at 70, 74.[6]

At trial, Godwin testified on his own behalf, and the manager of human resources, Ben Spears, testified for MAPCO. While Godwin did not dispute that an overpayment had occurred, he contended that, at the time of trial, he only owed MAPCO $8,188.56. The discrepancy between the amount claimed by MAPCO and the amount claimed by Godwin is based upon Godwin's contention that the attorney fees deducted directly from his Social Security award and the dependent benefits sent to his ex-wife's address were not subject to reimbursement under the Plan because he did not actually receive these funds.

Following the testimony of MAPCO's witness and again at the close of the evidence, MAPCO moved for a directed verdict, arguing that there were no factual issues and that the only dispute among the parties was a legal conclusion that could be decided by the court rather than being submitted to the jury. The trial court summarily denied these motions. The parties then discussed final jury instructions with the court. When Godwin argued for including an instruction setting forth the elements that MAPCO must prove in order to recover, the following colloquy occurred:

[MAPCO's Counsel]: Your Honor, it would be our contention that basically that instruction is not necessary based on the fact we have, Mr. Godwin has stipulated and has agreed that there was some overpayment, which in effect results in a breach of contract. Uhm, the dispute that is before the jury is basically the interpretation of the contract and the amount of damages to be awarded.

[Godwin's Counsel]: Your Honor, I would respond that this is a pattern jury instruction. The jury is able, if it chooses, to award no damages at this point. I believe they, it is within their realm to do as they please at this point. They are the trier of fact and of the law at this point.

[MAPCO's Counsel]: And, it would be our position that, in this case, this case is not appropriate for a zero damages when the Defendant himself has testified that there is a certain amount of overpayment that he does agree which has been made.

[Court]: How do you think the jury would benefit from the giving of this instruction?

[Godwin's Counsel]: Well, Your Honor, I think it is within the realm of the jury now to decide whether there was a breach of contract, whether the Plaintiffs are entitled to damages at all, I think they can decide that there are no damages regardless of whether we agree that he owes $8,000.00 or not. I think it is within their power to decide that he doesn't owe them, doesn't owe the coal companies any-

6. The introduction to the Summary Plan Description explains that the Plan "has been designed to provide, along with other sources of income, a reasonable income to you while you are disabled, and until your retirement income commences." *Appellants' Appendix* at 64. The introduction further highlighted that "the Plan assures you that if you are eligible for payments your income will be no less than 50% of the regular base pay you were receiving immediately prior to your becoming disabled." *Id.* at 65.

thing. They need to be instructed so that they're aware of that.

\* \* \*

[Court]: Okay, I'm going to decline to give this instruction. I think that it implies to the jury that they can give a zero damage award and that's clearly inconsistent with the evidence in this case. I don't think they are in a position to give an award of zero since there is a concession that there is a substantial amount owed, so.

*Trial Transcript* at 132–33.

A similar discussion arose following Godwin's argument that there should be two separate verdict forms, so as to provide an option for a defense verdict. Following counsels' arguments, the trial court ruled:

I think a zero verdict would certainly be inconsistent with the evidence that's been presented in the case. I assume that with that form they could insert zero in there if the (sic) wanted to, but I think that would not be consistent with the evidence that's been presented in the case and I think Judgment for the Defendant would not be a viable verdict, so.

*Trial Transcript* at 136–37.

The parties then presented closing arguments to the jury. Godwin, by counsel, argued that he should not have to pay MAPCO more than what he actually received from Social Security. He further emphasized that MAPCO benefited from his hiring an attorney and seeking Social Security benefits for a third time. In this quantum meruit type argument, he argued:

[T]he coal companies, through Mr. Spears, even agree that the company benefitted (sic) in the long run by Mr. Godwin taking that extra step, one that

was not required by the contract and applying for Social Security Disability that third time, making that third appeal. If he hadn't made that third appeal, with the assistance of an attorney, they would have continued to pay him $1,470.00 per month for the rest of his life. But, because he went that extra step, hired an attorney, made that appeal, got that award, they, all they were required to pay him after that was the difference between his long term disability payment and his Social Security, $268.00. He was saving the company $1,202.00 a month by hiring that attorney. They don't even want to count that in their computation. They want you to make him repay what his attorney saved them thousands of dollars on.

*Trial Transcript* at 148–49. Godwin's argument to the jury continued:

Does it make sense to you that a man who only receives $15,713.00 should have to turn around and pay $24,000.00 to the coal companies? It just makes no sense. Steve Godwin has admitted, and from your exhibits you can see that he has admitted that he owes the $15,713.00 he received in a back award, and he's been making payments on that in the amount of $268.73 during the entire time that they've been withholding that long term disability benefit from him. *At the end of the day, you can go back to that jury room and put a big zero for Defendants.* Steve Godwin admits that he owes at the present time Eight Thousand One Hundred and some odd dollars to the Plan and to the companies. He's admitted that from the start. He has tried over four (4) years now to get some resolution to this issue and he has not been able to even get the same figure from the company two (2) times in a row. We would ask that, *in the event that you decide not to put a big zero there by Defendants (sic) jury award,* that you

put the $8,188.00 that makes sense. The $15,000.00 less all of the payments that he's made by the company withholding his long term disability benefits. *Trial Transcript* at 153 (emphases supplied).

Thereafter, the jury returned a verdict finding that "THE PLAINTIFFS ARE ENTITLED TO RECOVER THE AMOUNT OF THE OVERPAYMENT FROM THE DEFENDANT AND ASSESS THE PLAINTIFFS' DAMAGES IN THE AMOUNT OF ZERO." *Trial Transcript* at 165. The trial court entered judgment in that amount.

On January 3, 2002, MAPCO filed a motion to correct error, seeking a new trial and arguing that the verdict was inadequate and against the weight of the evidence. The trial court held a hearing on said motion on February 28, 2002. During the hearing, the trial court stated:

Well, the contentions all along were that, not that Mr. Godwin did not owe anything, but, the question was how much did he owe? And, the case that was presented to the jury indicated, yes, Mr. Godwin owed money but he didn't owe the amount that Mapco was claiming.... So, I think the idea that the jury somehow based their decision on evidence or lack thereof, I don't think it's exactly consistent with the way that the case was presented to the jury and I think that they may very well have felt that they were unhappy with the way that Mapco was preceeding (sic) this way, proceeding in this, not in this case but in the way that they were dealing with Mr. Godwin and I'm sure they felt that Mr. Godwin had made every effort that he could make to get this thing worked out in an appropriate way and that Mapco was not cooperating and not doing what they should have done. I'm fairly convinced that that's the way the

jury was proceeding in this case and certainly, I think anybody hearing the circumstances would tend to feel that same way, but the question as to whether the damages that were awarded were appropriate based on the evidence that was presented and I'm not sure that zero award is exactly appropriate.

*Hearing Transcript* at 8–9. Godwin responded that a zero damage award was one of the risks MAPCO took by going to trial. He argued that the evidence supported zero damages in that he went above and beyond what was required under the Plan and actually saved MAPCO a substantial amount of money.

At the conclusion of the hearing, the trial court denied the motion to correct error, stating as follows:

Well, I'm inclined to say that I feel that the jury was influenced by things other than, well, I don't want to say other than the evidence, but other than the fact that the actual damages that should be awarded in this case. That is my inclination. However, I can't say definitely (sic) that the jury was influenced by something other than the evidence and I think the evidence offered did, uh, provide the jury with the opportunity to make the decision that they made. So, I'm going to enter judgment on the verdict as it was entered, however. I suspect that there would be a good possibility that on appeal we may be retrying this case, but, at his (sic) point, I'm going to enter a judgment on that verdict.

*Hearing Transcript* at 12. MAPCO now appeals.

1.

■ MAPCO contends that the trial court abused its discretion by denying its motion to amend the complaint to include reference to an unrelated worker's com-

pensation settlement (the settlement), which Godwin received for a foot injury that occurred while working for MAPCO in 1994. MAPCO requested leave to amend its complaint on November 14, 2001, almost three years after the complaint was filed and less than three weeks before trial. The requested amendment would have provided MAPCO with another means of establishing the alleged overpayment.

Ind. Trial Rule 15 governs the amendment of pleadings. T.R. 15(A) provides, in pertinent part: "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Amendments to pleadings are to be liberally allowed. *Nyby v. Waste Management, Inc.*, 725 N.E.2d 905 (Ind. Ct.App.2000), *trans. denied.* The trial court, however, retains broad discretion in granting or denying amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion. *Id.* "In determining whether an abuse has occurred, we look to a number of factors, which include 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment.' " *Id.* at 915 (quoting *Palacios v. Kline*, 566 N.E.2d 573, 575 (Ind.Ct.App. 1991)).

Here, MAPCO waited almost three years to assert a claim that could have been raised in its initial complaint. The settlement *with MAPCO* occurred on January 19, 1998, well in advance of the filing of the initial complaint and nearly four years prior to the motion to amend. As the settlement involved MAPCO, it cannot be claimed that new evidence was discovered during the course of the litigation that led MAPCO to seek this amendment. *See General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127 (Ind.Ct.App.1997) (refusing to find an abuse of discretion where trial court denied a motion to amend filed four years after the complaint and where there was no newly discovered evidence that justified the delay), *trans. denied.*

In addition to this undue delay, we observe that the trial court could reasonably find that the late-hour amendment would place an unreasonable burden upon Godwin, as Godwin would have to quickly develop a defense against this additional theory of recovery. For example, it would be necessary to obtain evidence regarding what portion of the settlement award was attributable to lost wages and to determine whether "Other Monthly Income Benefits" include worker's compensation benefits obtained for prior, unrelated disabilities.[7] We cannot say that the trial court abused its discretion by denying MAPCO's motion to amend the complaint.

## 2.

MAPCO also challenges the trial court's denial of its motion to correct error, arguing that the damage award was inadequate and contrary to the weight of the evidence. MAPCO specifically contends that there was no evidence presented at trial to support an award of zero damages. To the contrary, MAPCO points out that Godwin admitted at trial

---

7. Section 6.4(A) defines Other Monthly Income Benefits to include worker's compensation benefits or similar benefits "payable for loss of time on account of disability". *Appellants' Appendix* at 46. The Reimbursement Agreement further provides that if Godwin ultimately received worker's compensation benefits "for the disability" for which reduction was not made, he would reimburse the Plan. *Id.* at 82.

that he was obligated to reimburse MAP-CO $8,188.56 in overpayment.

 A decision to grant or deny a motion to correct error is reviewed for an abuse of discretion. *City of Crawfordsville v. Price*, 778 N.E.2d 459 (Ind.Ct.App.2002). An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances and the inferences that may be drawn therefrom. *Id.* To determine whether the trial court abused its discretion by denying MAPCO's motion to correct error, we must decide whether the jury's award of zero damages is inadequate and outside the scope of the evidence.

The appellate court employs a strict standard when reviewing a claim that an award of damages is inadequate, and we will neither reweigh the evidence, nor judge the credibility of the witnesses. We consider only the evidence favorable to the award. In addition, we must not substitute our idea of a proper award for that of the jury. Further, we will not reverse a damage award so long as the damages are within the scope of the evidence. A verdict will be reversed only upon a finding that, based upon the evidence, the amount of damages awarded indicate that the jury was motivated by prejudice, passion, partiality, corruption or consideration of some improper element. We will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable grounds.

*Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 280 (Ind.Ct.App.2001) (citations omitted).

We initially observe that we are at a loss as to why this breach of contract case reached the point of a jury verdict. At trial, the parties agreed on all of the relevant facts and simply presented to the jury differing interpretations of the contractual language.[8] The trial court then instructed the jury to interpret the relevant contractual provisions to determine the amount of overpayment. This type of determination is particularly suited for a trial court, not a jury. *See Circuit City Stores, Inc. v. American Nat'l Ins. Co.*, 779 N.E.2d 62, 66 (Ind.Ct.App.2002) ("[i]nterpretation of the language in a contract is a question of law especially suited for summary judgment proceedings"); *Cowper v. Collier*, 720 N.E.2d 1250, 1255 (Ind.Ct.App.1999) ("[i]t is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact finder must determine the facts upon which the contract rests"), *trans. denied.* MAPCO, however, does not appeal the trial court's denial of summary judgment.[9]

At trial, Godwin openly acknowledged that an overpayment existed and that he owed over eight thousand dollars to MAP-CO. He specifically testified during direct examination by his counsel as follows:

Q. Steve, you acknowledge that you owed what you were paid in a back award from the company, is that correct?

A. There's no doubt about that.

Q. You owe that, uh, whatever you received in the back award to the company?

A. That's correct.

Q. And, you contend that you have been making payments on that, is that correct?

A. That's correct.

Q. What is the bottom line of what you believe you owe the company?

---

8. The absurdity of proceeding in this manner is revealed when Godwin, a coal miner, is questioned regarding his interpretation of the contractual provisions.

9. None of the summary judgment materials are included in the record before us.

A. As of this month, if we can get this thing settled this month, it's $8,188.56.

*Trial Transcript* at 120. Moreover, Godwin submitted a detailed spreadsheet into evidence, which set forth how he reached this overpayment amount. At no point at trial did Godwin, the only defense witness, testify that MAPCO was entitled to zero damages. His only contention was that he did not owe MAPCO for the attorney fees that ultimately benefited the company or for the dependent benefits that were sent to his ex-wife's address.

In light of Godwin's own evidence, the jury's award of zero damages is clearly inadequate and not within the scope of the evidence. While we do not fault the jury for its apparent displeasure with MAPCO, such displeasure is not a proper consideration in a breach of contract case, especially where the defendant has conceded that a substantial amount of overpayment exists. Under the relevant contractual provisions, MAPCO is entitled to reimbursement of any overpayment. Therefore, we remand this cause to the trial court. Upon remand, the trial court shall allow counsel to present argument regarding the proper interpretation of the relevant contractual provisions. The trial court shall then' interpret said contractual provisions and determine, based upon the undisputed facts, whether the dependent benefits and/or the portion of Social Security benefits paid directly to Godwin's attorney should be included in the overpayment amount.

Judgment affirmed in part, reversed in part, and remanded.

BROOK, C.J., and MATTINGLY–MAY, J., concur.