## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 03 2018, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

John J. Schwarz, II
Schwarz Law Office, PC
Hudson, Indiana

ATTORNEYS FOR APPELLEE

Richard P. Samek
Larry L. Barnard
Carson LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert J. Fiedler and Dianne C. Fiedler, *Appellants-Respondents,* v. LaGrange County Regional Utility District, *Appellee-Petitioner.* | July 3, 2018 Court of Appeals Case No. 44A03-1712-MI-2951 Appeal from the LaGrange Circuit Court The Honorable Randy L. Coffey, Special Judge Trial Court Cause No. 44C01-1308-MI-56 |

**Najam, Judge.**

# Statement of the Case

Robert and Dianne Fiedler (collectively "the Fiedlers") appeal the trial court's judgment following a final hearing on the LaGrange County Regional Utility District's ("the Utility District") complaint against the Fiedlers. The Fiedlers raise the following issues for our review:

1. Whether the trial court abused its discretion when it denied their three motions to amend their answer.

2. Whether the trial court abused its discretion when it precluded them from raising constitutional claims at the final hearing.

3. Whether the trial court erred when it ordered them to connect their home to a sewer line without also ordering the Utility District to compensate them for an easement on their property.

4. Whether the trial court abused its discretion when it awarded the Utility District attorney's fees.

We affirm.

# Facts and Procedural History

This court explained the relevant facts and procedural history in a prior appeal as follows:

> In February 2008, the Utility District entered into an agreement to provide sewer services to the residences located around Shipshewana Lake. Some or all of the funding for the sewer project was provided by the United States Department of Agriculture (USDA). The Code of Federal Regulations requires

that the Utility District, having accepted USDA funding, was obligated to comply with the Uniform Relocation Assistance and Real Property Acquisition Act (URA). 49 CFR 24.101(c)(1).

For the Utility District to provide sewer services to the affected residences, a grinder pump and other equipment had to be installed on each lot. The Utility District notified the affected homeowners that it would install all necessary equipment, at no cost to the homeowners, if the homeowners granted a voluntary easement to the Utility District for the installation and maintenance of the equipment. The Fiedlers owned a lot on Shipshewana Lake and declined to grant a voluntary easement to the Utility District. Rather than proceed with condemnation proceedings, as allegedly required by the URA, the Utility District merely stated that it would not install the equipment, that the Fiedlers would have to do so at their own cost, and that the Fiedlers were required to disconnect their private septic tank system by a certain date. At Utility District meetings held on July 11 and August 8, 2012, an attorney for the Utility District and a Board member told Robert Fiedler that the Utility District was not required to comply with the URA. Appellants' App. p. 70-72. The Fiedlers did not comply with the directives issued by the Utility District.

On August 22, 2013, the Utility District filed a complaint against the Fiedlers, seeking an order to force the Fiedlers to connect to the District's sewer line, to discontinue use of their own private septic system, and to pay the costs and attorney fees stemming from the litigation.[] The Utility District filed a motion for summary judgment on March 6, 2014, and the Fiedlers, pro se, filed a cross-motion for summary judgment on June 4, 2014.

The trial court held a hearing on the cross-summary judgment motions on October 15, 2014. On October 24, 2014, the Fiedlers—newly represented by counsel—filed a motion to amend their answer and to file counterclaims, alleging for the first time that the Utility District was required—and failed—to

comply with the URA and acted fraudulently throughout its dealings with the Fiedlers. On November 19, 2014, the trial court entered partial summary judgment in favor of the Utility District, finding that the Fiedlers were required to connect to the sewer system and reserving the calculation of damages, to include attorney fees and hook-up fees, for a later proceeding. The Fiedlers sought an interlocutory appeal of this order, but their appeal was eventually dismissed.

As the appellate proceedings were ongoing, counsel for the Fiedlers sought documentation pursuant to the Freedom of Information Act. Eventually, he received the documents he had been seeking, which confirmed that the Utility District was aware from the inception of the agreement with the USDA that it would be bound by the URA.

On October 22, 2015, the Fiedlers filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B), alleging that the fraudulent behavior of the Utility District and/or newly discovered evidence warranted a ruling in their favor. On November 25, 2015, the trial court summarily denied the motions.

*Fiedler v. LaGrange Cty. Reg'l Util. Dist.*, No. 44A03-1512-MI-2316, 2016 WL 3017921, at *1-2 (Ind. Ct. App. May 25, 2016) ("*Fiedler I*"). The Fiedlers appealed the trial court's denial of their motion to set aside the partial judgment, and we affirmed the trial court. We held in relevant part as follows:

First, under Rule 60(B)(2), the Fiedlers argue that they are entitled to relief because of the newly-discovered evidence they received as a result of their Freedom of Information Act request. We acknowledge that they did not receive the documentation until after the conclusion of the litigation. But they could have requested this documentation long before they actually did.[]

Moreover, the "evidence" to which they direct our attention is not evidence at all. At the heart of their claim is the applicability of the URA to the Utility District; this is an issue of law that could have been answered without the documents on which they rely. We do not find that they are entitled to relief on this basis.

Second, under Rule 60(B)(3), they contend that they are entitled to relief because of the Utility District's alleged fraud or misrepresentation. Specifically, they direct our attention to statements made by the Utility District's attorney at public meetings—the attorney stated that the Utility District was not required to comply with the URA. They also point to statements made by the attorney during a hearing before the trial court. To establish fraud under this rule, a party must show (1) a material misrepresentation of past or existing fact; (2) that was untrue; (3) that was made with knowledge of or in reckless ignorance of its falsity; (4) that was made with the intent to deceive; (5) that was rightly relied upon by the complaining party; and (6) that proximately caused the injury or damage complained of. *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind. Ct. App. 2005). In this case, any alleged misrepresentation was one of law, not of fact. And as stated above, the text of the relevant laws and regulations are, and always have been, publicly available. Therefore, the Fiedlers cannot be said to have reasonably relied on these statements.[] We find no error in the trial court's denial of the motion for relief from judgment pursuant to Trial Rule 60(B).

*Id.* at *3.

[3]     On remand, the trial court held a status hearing on all pending matters, including the Fiedlers' motion for a final order. After that hearing, on April 24, 2017, the trial court issued an order that set the matter for a "final hearing and/or trial" subject to the following "conditions":

a) The Court has already ruled that the [Fiedlers] must connect the subject real estate to the LaGrange County Regional Utility District sewer system. Any final judgment issued by the Court will stand on or by that ruling.

b) In order to connect to the subject sewer system, an easement must exist. In furtherance of this prerequisite, each party shall fashion a proposed easement for connection. The proposal must allow for a meets [sic] and bounds description of the proposed easement. The [Fiedlers] shall allow surveying agents on and about the subject real estate sufficient to allow proper measurement for such meets [sic] and bounds description. Each party shall tender to the other its or their proposed easement on or before May 26, 2017.

c) The parties are required to mediate the issues prior to the date. . . .

Appellants' App. Vol. II at 36. Thereafter, rather than working out an agreement with the Utility District on the easement issue, the Fiedlers "opted to purchase their own grinder pump and install it on their own, thereby obviating the need for an easement." Tr. at 44. The Fiedlers finally connected their residence to the sewer line on October 31.

[4] At the final hearing on November 8, the only issues left to address were proposed penalties against the Fiedlers and attorney's fees. After hearing evidence, the trial court ordered that no penalties would be assessed against the Fiedlers, but that they shall pay $64,511.63 in attorney's fees to the Utility District. This appeal ensued.

# Discussion and Decision

## *Law of the Case*

Initially, we address the Utility District's contention that the issues raised by the Fiedlers on appeal are "precluded by law of the case." Appellee's Br. at 15. In particular, the Utility District maintains that "the Fiedlers' appeal in this case amounts to nothing more than yet another attempt to challenge and overturn the Summary Judgment Order." *Id.* at 18. And the Utility District asserts that, because this court dismissed the Fiedlers' appeal of the trial court's summary judgment order on procedural grounds (namely, that the appeal was untimely), and because we affirmed the trial court's denial of the Fiedlers' motion to set aside the summary judgment, the Fiedlers are barred from raising the issues they assert in this appeal. We cannot agree.

The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Luhnow v. Horn*, 760 N.E.2d 621, 625 (Ind. Ct. App. 2001). The purpose of the doctrine is to minimize unnecessary relitigation of legal issues once they have been resolved by an appellate court. *Id.* Accordingly, under the law-of-the-case doctrine, relitigation is barred for all issues decided "directly or by implication in a prior decision." *Id.* (quoting *Certain Ne. Annexation Area Landowners v. City of Ft. Wayne*, 622 N.E.2d 548, 549 (Ind. Ct. App. 1993), *trans. denied*).

Here, our dismissal of the Fiedlers' first appeal of the summary judgment on procedural grounds did not decide any substantive issues. And, in our memorandum decision affirming the trial court's denial of the Fiedlers' Trial Rule 60(B) motion, we decided only two issues: whether the trial court should have set aside the summary judgment based upon newly discovered evidence or based upon the Utility District's alleged fraud or misrepresentation. *Fiedler I*, slip op. at 3. We did not address the merits of the summary judgment in favor of the Utility District, including either the Fiedlers' constitutional claims or their motions to amend their answer. We cannot agree with the Utility District's contention that we addressed each of the issues raised in this appeal either directly or by implication.[1] Accordingly, we address the Fiedlers' appeal on the merits.

### Issue One: Motions to Amend Answer

The Fiedlers first contend that the trial court abused its discretion when it denied their three motions to amend their answer, the first filed on September 24, 2014, or more than eight months after they filed their initial answer, the second filed on October 24, 2014, and the third filed on October 15, 2015. Indiana Trial Rule 15 governs the amendment of pleadings. Trial Rule 15(A) provides, in pertinent part: "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when

---

[1] As we discuss below, our resolution of the Fiedlers' contention that the trial court should have given them leave to amend their answer based on "newly discovered evidence" is informed by our memorandum decision.

justice so requires." Amendments to pleadings are to be liberally allowed. *MAPCO Coal, Inc. v. Godwin*, 786 N.E.2d 769, 777 (Ind. Ct. App. 2003). The trial court, however, retains broad discretion in granting or denying amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion. *Id.* In determining whether an abuse has occurred, we look to a number of factors, which include undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment. *Id.*

[9] First, the Fiedlers cannot show that the trial court abused its discretion when it denied their first motion to amend their answer because they did not include with that motion a proposed amendment or otherwise tell the court the reason for the proposed amendment other than to state, without explanation, that they had become "privy to new information that was not known at the time they filed their answer pro se."[2] Appellants' App. Vol. II at 55. Second, the Fiedlers do not explain in their brief on appeal what amendments were proposed to their answer in either their second or third motions to amend their answer. The Fiedlers state in their brief on appeal only that the amendments included "four (4) pages of counterclaims against the District that utilized . . . newly discovered

---

[2] We reject the Fiedlers' contention in their reply brief that the "filing of a proposed amended pleadings [sic] was not necessary or required." Reply Br. at 14. It goes without saying that a trial court cannot exercise its discretion in ruling on such a motion, let alone abuse its discretion, if it has no way to determine the merits of a proposed amendment.

evidence to support several constitutional challenges." Appellants' Br. at 21. And, without citation to the record,[3] the Fiedlers set out the "newly discovered evidence" they allege supported their motions to amend their answer as follows:

1.    The District received Federal Funding for the Shipshewana Lake Project and was required to adhere to the URA.

2.    The District wholly failed to adhere to the URA.

3.    The District treated homeowners disproportionately.

4.    The District had engaged in fraud and misrepresentation.

5.    That Fiedler had valid constitutional claims based upon the evidence it [sic] had unearthed.

*Id.*

[10]    We reject the Fiedlers' contention that "newly discovered evidence" supported their motions to amend for several reasons. In *Fiedler I*, this court rejected the Fiedlers' claims regarding the allegedly "newly discovered evidence" in the context of their motion to set aside the trial court's partial summary judgment. In particular, we noted that there was "no dispute that at all times, the Fiedlers have known that the sewer project was fully or partially funded by the USDA" and Robert Fiedler had "sharply questioned the Utility District attorney about

---

[3] We note that the Fiedlers' brief on appeal is *replete* with alleged statements of "fact" without any citation to the record on appeal to support them. *See* Ind. Appellate Rule 46(A)(8)(a).

compliance with the URA" at a Utility District meeting on August 8, 2012. *Fiedler I*, slip op. at *2 n.2. Further, we observed that "the applicability of the URA to the Utility District . . . is an issue of law that could have been answered without the [newly obtained] documents on which they rel[ied]" in support of their motion to set aside the judgment. *Id.* at *3. Thus, we rejected the Fiedlers' argument that any of the alleged "evidence" was "newly discovered."

[11]    With respect to the alleged "disproportionate" treatment argument, the Fiedlers state in their brief, again without citation to the record, that they did not learn that they had been treated differently from other homeowners until five months after they had filed their answer. Without any citation to evidence to support that statement, we cannot say that the Fiedlers have shown an abuse of the trial court's discretion in rejecting the proposed amendment on that ground.

[12]    Finally, with respect to the Fiedlers' contention that they had been "intentionally misled by the District" and, therefore, did not know "at the time of filing their answer the URA had not been followed," this court rejected a similar argument in *Fiedler I*. Appellants' Br. at 19. As we held in that memorandum decision, "any alleged misrepresentation" that the Utility District was not required to comply with the URA "was one of *law*, not of *fact*." *Fiedler I*, slip op. at *3 (emphases original). Because "the text of the relevant laws and regulations are, and always have been, publicly available[,]" the Fiedlers "cannot be said to have reasonably relied on these statements." *Id.* For these same reasons, the Fiedlers cannot show that the proposed amendment on this basis was warranted based on "newly discovered evidence."

[13]     In sum, the Fiedlers have not persuaded us that the claims they sought to bring in their amended answer were unknown or unknowable at the time they filed their initial answer. And they waited more than eight months after their initial answer to file their first motion to amend their answer. At that time, the parties had already submitted their memoranda on the Utility District's summary judgment motion. We hold that the Fiedlers have not shown that their proposed amendments to their answer were made without undue delay. *See Hilliard v. Jacobs*, 927 N.E.2d 393, 399 (Ind. Ct. App. 2010) (affirming trial court's denial of plaintiff's motion to amend complaint where new claims could have been raised in original complaint and motion filed after trial court issued summary judgment order), *trans. denied*. The trial court did not abuse its discretion when it denied the motions to amend their answer.

## Issue Two: Constitutional Claims

[14]     The Fiedlers next contend that the trial court abused its discretion when it ordered that they would be prohibited at the final hearing from arguing claims that the Utility District had violated their constitutional rights. In particular, in its "Order Following Final Pretrial Hearing," the court stated in relevant part as follows: "The [Fiedlers] request that the Court hear evidence regarding the [Fiedlers'] equal protection arguments. The Court finds that such arguments shall not be heard, inasmuch as the same arguments are moot by virtue of the Court's previous summary judgment order." Appellants' App. Vol. II at 38. On appeal, the Fiedlers maintain that their constitutional arguments were not moot and that they "should have been allowed by the Trial Court to bring up

issues of constitutionality at [the] final hearing." Appellants' Br. at 24. However, as we explain below, the Fiedlers have waived this issue for our review.

[15] A pre-trial hearing or a motion in limine is appropriate to determine the admissibility of evidence prior to trial. *See Miller v. State*, 716 N.E.2d 367, 370 (Ind. 1999). However, in order to preserve an error for appellate review, a party must do more than challenge the ruling on a motion in limine. *Id.* To raise the question of error, the evidence must be offered at trial to give the trial court an opportunity to rule on its admissibility at that time. *Id.*

[16] Here, the Fiedlers do not direct us to any part of the record on appeal showing that they challenged the trial court's ruling on this issue in its pretrial order by attempting to raise any constitutional argument at the final hearing. And our review of the transcript of the final hearing shows that the Fiedlers did not ask the court to reconsider its ruling on their proffered constitutional arguments. The Fiedlers have waived this issue for our review. *See id.*

### Issue Three: Compensation for Easement

[17] The Fiedlers contend that the trial court "erred when it issued an order stating that Fiedler had to connect" to the new sewer line. Appellants' Br. at 48. They maintain that "[r]equiring [them] to connect without being paid for the easement violated the URA." *Id.* However, again, the Fiedlers have waived this issue for our review.

[18]     First, the Fiedlers do not cite either relevant authority or the record on appeal in support of their argument on this issue.  Rather, the Fiedlers refer us to an argument "earlier in this brief," but they do not cite the location of the supporting argument.  *Id.*  Second, and moreover, the Fiedlers do not direct us to any part of the record on appeal showing that the trial court ordered them to grant the Utility District an easement *without compensation*.  Our review of the record shows that, while the trial court ordered the Fiedlers to connect to the new sewer line, the court also ordered and decreed as follows:  "In order to connect to the subject sewer system, an easement must exist.  In furtherance of this prerequisite, each party shall fashion a proposed easement for connection. . . .  Each party shall tender to the other its or their proposed easement on or before May 26, 2017."  Appellants' App. Vol. II at 36.  Nothing in the trial court's order states that the Utility District was entitled to an easement without compensation.[4]  And, in any event, rather than negotiating an easement with the Utility District per the trial court's order, the Fiedlers "opted to purchase their own grinder pump and install it on their own, thereby obviating the need for an easement."  Tr. at 44.  The Fiedlers have not demonstrated that the trial court ordered them to grant the Utility District an easement without compensation, let alone that the court erred if it did so.

---

[4]  If there is anything in the record showing that the trial court ordered an easement without compensation, the Fiedlers do not cite to it, and our review of the record reveals no such order.

### *Issue Four:  Attorney's Fees*

[19]   Finally, the Fiedlers contend that the trial court abused its discretion when it ordered them to pay the Utility District's attorney's fees.  We review a trial court's decision to grant a petition for attorneys' fees for an abuse of discretion. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012).  A trial court has abused its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the court has misinterpreted the law. *Id.*

[20]   The Fiedlers' argument on this issue is two-fold.  First, they maintain that this case is on all fours with that in *Steuben Lakes Regional Waste District v. Tucker*, 904 N.E.2d 718 (Ind. Ct. App. 2009), where this court affirmed the trial court's denial of the waste district's request of attorney's fees.  Second, the Fiedlers maintain that, because the trial court found that "the penalty provision of [the LaGrange County Regional Utility District Ordinance No. 2014-8-25] on its face violates [Indiana Code Section 13-26-5-2] . . . [and] no *valid* ordinance exists that allows for any penalty[,]" the court was barred from awarding attorney's fees.  Appellants' App. Vol. II at 48.  We address each contention in turn.

[21]   In *Tucker*, homeowners initially agreed to grant an easement for connection to a new sewer system, but after a "dispute arose" regarding the location of the easement, the waste district threatened to increase the cost of the connection, and the homeowners filed a declaratory judgment action against the waste district.  904 N.E.2d at 720.  After the waste district moved for summary

judgment, the parties negotiated a settlement agreement, and the waste district asked the trial court to hold a hearing to determine costs and fees. Still, the trial court held a summary judgment hearing and entered summary judgment in favor of the homeowners. In particular:

> The trial court reasoned that the Wa[ste] District created a "Constitutional dilemma" for the Tuckers by forcing them to either surrender their right to a condemnation proceeding or pay a higher connection charge and attorney fees. The trial court ordered the Tuckers to pay the $2,775.00 connection charge plus pre-judgment interest and ordered the parties to pay their own attorney fees.

*Id.* On appeal, we affirmed the trial court and stated, "[t]he trial court properly ordered the Tuckers to pay the $2,775.00 connection charge instead of the $8,191.60 subsequently requested by the Waste District." *Id.* at 723. And we affirmed the trial court's denial of the waste district's attorney's fee request, stating as follows:

> [T]he Waste District asserts that it is entitled to attorney fees based on Indiana Code Section 13-26-5-2(9), which allows the Waste District to "apply to the circuit or superior court of the county in which the property is located for an order to force connection, with the cost of the action, including reasonable attorney's fees of the district, to be assessed by the court against the property owner in the action." *It appears that the Tuckers have always agreed to connect to the sewer.* See App. p. 18. *They only refused to voluntarily grant the Waste District the specific easement it requested.* As a result, the Waste District threatened to nearly triple the Tuckers' connection charge. The Tuckers then filed an action seeking to stop the Waste District from demanding a

specific easement and increasing the connection charge, and the Waste District counter-claimed.

*This litigation arose out of the dispute regarding the easement and the threat of an increased connection charge, not the Tuckers' failure to connect to the sewer after the easement was procured and sewer was constructed.* The Waste District has not established that it is entitled to attorney fees for the litigation associated with the procurement of the easement and the determination of the appropriate connection charge.

*Id.* (emphases added).

[22]  The Fiedlers maintain that, like the Tuckers, they "did not want to voluntarily provide an easement to the District and pay a higher connection charge." Appellants' Br. at 41.  The Fiedlers continue, "[b]y not being agreeable to giving an easement, Fiedler had to pay for the pump and other costs to be connected.  This was an increased connection charge assessed to Fiedler[,]" akin to the increased connection charge in *Tucker*. *Id.*  The Fiedlers direct us to evidence that the Utility District "lay[ed] out the consequences" for failing to voluntarily give an easement, including being subjected to attorney's fees and court costs. *Id.* at 42.  Thus, the Fiedlers contend that *Tucker* is controlling and requires that the attorney's fee award be reversed.  We cannot agree.

[23]  Indiana Code Section 13-26-5-2(9) provides as follows:

> [A district may p]rovide by ordinance for a reasonable penalty, not to exceed one hundred dollars ($100) per day, for failure to connect and also apply to the circuit or superior court of the county in which the property is located for *an order to force*

*connection, with the cost of the action, including reasonable attorney's*
*fees of the district*, to be assessed by the court against the property
owner in the action.

(Emphasis added). In *Tucker*, the *homeowners* filed a complaint for declaratory judgment against the waste district, and the trial court denied the waste district's request for attorney's fees under the statute. In contrast, here, the Utility District filed a complaint against the Fiedlers "to force connection" to the new sewer line after they refused to do so. *Id.* Because attorney's fees are expressly permitted under the statute under these circumstances, *Tucker* is inapposite and we cannot say that the trial court abused its discretion when it awarded attorney's fees.

[24] Next we address the Fiedlers' contention that the attorney's fee provision of the LaGrange County Regional Utility District Ordinance No. 2014-8-25 ("the Ordinance") is invalid and requires that we reverse the attorney's fee award. The Fiedlers maintain that, because the trial court found that "the penalty provision of [the Ordinance] on its face violates [Indiana Code Section 13-26-5-2] . . . [and that] no *valid* ordinance exists that allows for any penalty[,]" the attorney's fee provision must also be invalid. Appellants' App. Vol. II at 48 (emphasis original). In essence, the Fiedlers assert that attorney's fees are penalties under the Ordinance and are, therefore, not permitted here. We cannot agree.

[25] While the trial court expressly found that the penalty provision of the ordinance was invalid and did not assess any penalty against the Fiedlers for that reason,

the trial court did not find the attorney's fee provision in the ordinance to be invalid.[5] On the contrary, the trial court cited Indiana Code Section 13-26-5-2(9) as granting "authority to the [Utility District] to enact an ordinance authorizing recover[y] of 'reasonable attorney's fees.'" *Id.* Thus, the trial court relied on the attorney's fee provision in the Ordinance in awarding attorney's fees. The Fiedlers' contention that the attorney's fee provision is invalid because the penalty provision is invalid is entirely without merit. The trial court did not abuse its discretion when it awarded the Utility District attorney's fees.[6]

## Conclusion

[26] The trial court did not abuse its discretion when it denied the Fiedlers' three motions to amend their answer. The Fiedlers did not preserve for appellate review the issue of whether the trial court abused its discretion when it precluded them from raising constitutional claims at the final hearing. The Fiedlers have not demonstrated that the trial court ordered them to connect to the sewer line by granting an easement without compensation or that it erred if it did so. And the trial court did not abuse its discretion when it ordered the Fiedlers to pay a portion of the Utility District's attorney's fees.

---

[5] We reject the Fiedler's assertion that, because the attorney's fee provision was included in a section of the Ordinance entitled "Penalties for Violation," it must be considered a penalty.

[6] As the trial court noted, the Fiedlers did not "contest the value of the attorney fee claim[.]" Appellants' App. Vol. II at 49.

Affirmed.

Robb, J., and Altice, J., concur.